J-A32010-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ARTHUR R. KRUSEN JR. AND VANESSA KRUSEN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 859 MDA 2017 |
| PAUL W. WAGNER | : | |

Appeal from the Judgment Entered May 2, 2017
In the Court of Common Pleas of Schuylkill County
Civil Division at No(s):  S-1378-2013

BEFORE:   OTT, J., DUBOW, J., and STRASSBURGER[*], J.

MEMORANDUM BY OTT, J.:                          **FILED MARCH 09, 2018**

Arthur R. Krusen, Jr., and Vanessa Krusen (Krusens) appeal from the judgment entered May 2, 2017, in the Court of Common Pleas of Schuylkill County, in favor of Paul Wagner and against Krusens on all claims in Krusens' complaint, following a non-jury trial.  In the underlying action, Krusens sought to access their landlocked property[1] (the Property) by asserting an easement by necessity, in the alternative, an easement by implication, over a road on Wagner's property.  In this appeal, Krusens contend the trial court erred in (1) failing to consider overwhelming, circumstantial evidence that leads to the conclusion that the Property was always accessed by the private road on

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Krusens' property is bordered on three sides by Wagner's property and on one side by land of Deep Run All Sports Club.  **See** Trial Court Opinion, 11/7/2016, at 6.  **See also** N.T., 10/14/2016, at 36.

Wagner's property, (2) concluding that an undisputed, landlocked property does not satisfy the element of "strict necessity" to establish an easement, and (3) concluding that Krusens must prove the specific intent at the time of severance of the Property in 1937. **See** Krusens' Brief at 4. Based on the following, we affirm on the basis of the trial court's sound opinions.

The parties are well acquainted with the history of this case and we need not restate it here.[2] By opinion and order of November 7, 2016, the trial court entered judgment in favor of Wagner and against Krusens' on all claims in their complaint. Krusens filed post-trial motions, which the trial court denied by opinion and order of January 18, 2017. Judgment was entered on May 2, 2017, and this appeal followed.[3]

> Our standard of review of this issue is well-settled:
>
> The trial judge, sitting in equity as a chancellor, is the ultimate fact-finder. The scope of review, therefore, is limited. The final decree will not be disturbed unless the chancellor committed an error of law or abused his or her discretion. The findings of fact made by the trial court will not be disturbed unless they are unsupported by competent evidence or are demonstrably capricious.

**Daddona v. Thorpe**, 749 A.2d 475, 480 (Pa. Super. 2000) (citation omitted).

_____

[2] We simply mention that Krusens purchased their landlocked property in 2006. Krusens state in their brief that but for the Pennsylvania Supreme Court's decision in **In the Matter of Private Road for the Benefit of O'Reilly**, 5 A.3d 246 (Pa. 2010) (holding the opening of a private road must have a public purpose), this matter would have been resolved pursuant to the Private Road Act. **See** Krusen's Brief at 1, 4.

[3] Krusens timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement.

Relevant to the issues raised in this appeal concerning an easement by necessity and an easement by implication, we observe:

> The three fundamental requirements for an easement by necessity to arise are the following:
>
> 1) The titles to the alleged dominant and servient properties must have been held by one person[;]
>
> 2) This unity of title must have been severed by a conveyance of one of the tracts[;]
>
> 3) The easement must be necessary in order for the owner of the dominant tenement to use his land, with the necessity existing both at the time of the severance of title and at the time of the exercise of the easement.
>
> An easement by necessity is always of strict necessity. An easement by necessity never exists as a mere matter of convenience. . . .

*Youst v. Keck's Food Service, Inc.*, 94 A.3d 1057, 1075 (Pa. Super. 2014)

(citations omitted). Furthermore,

> In deciding whether an easement has been created by implication, the Pennsylvania courts have used two different tests, the traditional test and the Restatement test.
>
> The traditional test has been described as follows: "Three things are regarded as essential to create an easement by implication on the severance of the unity of ownership in an estate; first, a separation of title; second, that, before the separation takes place, the use which gives rise to the easement, shall have been so long continued, and so obvious or manifest, as to show that it was meant to be permanent; and third, that the easement shall be necessary to the beneficial enjoyment of the land granted or retained. To these three, another essential element is sometimes added,--that the servitude shall be continuous and self-acting, as distinguished from discontinuous and used only from time to time."

The view expressed in the RESTATEMENT OF PROPERTY § 474 [sic] … "emphasizes a balancing approach, designed to ascertain the actual or implied intention of the parties. No single factor under the Restatement approach is dispositive. Thus, the Restatement approach and the more restrictive tests . . . co-exist in Pennsylvania."

***Daddona, supra,*** 749 A.2d at 481-82 (citations omitted).

The Honorable Jacqueline L. Russell has fully addressed the issues raised by Krusens in this appeal in two thorough opinions. ***See*** Trial Court Opinion, 1/18/2017 (finding: (1) Krusens did not present a complete chain of title following what Krusens claimed was the property severance pertinent to their case — namely, when the properties of the predecessors in title of Krusens and Wagner were severed in 1937, (2) Krusens' grantors (Joseph and Kathy Pattay) received the 14.6034 acres (now owned by Krusens) in 1999; however, the location of and access to the land retained by Pattays' grantor in what appeared to be the 1999 severance was never identified and addressed, (3) Reliable testimony established the dirt farm road that Krusens desire to utilize over Wagner's land accessed a public roadway known as Valley Road, but the dirt farm road has a terminus about 500 yards away from Krusens' property line, (4) Reliable proof did not establish that after 1937 any owner of the land now titled in Krusens' names traversed Wagner's land via the farm road without Wagner's consent, (5) To establish an easement by necessity over what Krusens have identified as the servient estate, Krusens were required to prove the easement over that parcel was necessary both at the time of severance of title in 1937 and now, (6) To do so the servient estate

must be known, but Krusens never identified the location of that estate, (7) Wagner owns more acreage than the parcel involved in the 1937 severance and the evidence did not address whether access to the public roadway by traversing the alleged servient property existed at any time; Arthur Krusen testified during cross examination that access does not exist and Krusens do not seek access across it, (8) Moreover, Krusens presented no proof about the necessity of an easement over the servient estate in 1937 by the then-predecessor in title to Krusens, (9) Krusens did not prove prior use by their predecessors in title of any portion of any lands now owned by Wagner to access a public road, and reliable evidence established no prior use; and (10) rejecting the issues raised in post-trial motions on the grounds, *inter alia*, (a) Krusens did not prove strict necessity because their evidence failed to address whether other possible means of access existed at the time of the 1937 severance or the current time, (b) accepting that in 1937 the farm road on Wagner's property existed in the same location from the public road to the terminus in the farm field as it does today does not establish the roadway ended at Krusens' property line or over any of the alleged servient tract, (c) Krusens failed to establish an easement by implication by failing to prove prior use of the alleged easement and did not address multiple factors under the Restatement of Property test for an implied easement).  ***See also*** Trial Court Opinion, 11/7/2016 (issued following the non-jury trial).

In essence, the trial court found Krusens failed to prove by a preponderance of the evidence that they were entitled to the specific relief requested.

Based on our review, we find no error of law or abuse of discretion by the trial court. Furthermore, in light of the trial court's cogent discussions, no further elaboration is warranted by this Court. Accordingly, we affirm, based upon the sound reasoning of the trial court.[4]

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/09/2018

---

[4] In the event of further proceedings, the parties are directed to attach Judge Russell's opinions of January 18, 2017, and November 7, 2016, to this memorandum.

Circulated 02/27/2018 02:00 PM

COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY—CIVIL ACTION-LAW

ARTHUR R. KRUSEN, JR. and : No. S-1378-2013
VANESSA KRUSEN, husband and :
wife, :
          Plaintiffs :
:
vs. :
:
PAUL W. WAGNER, :
          Defendant :

Sean E. Summers, Esquire - for Plaintiffs
John B. Lieberman, III, Esquire - for Defendant

## DECISION

RUSSELL, J.

Plaintiffs Arthur R. Krusen, Jr. and Vanessa Krusen filed this action against Defendant Paul W. Wagner on July 17, 2013. Per Plaintiffs' October 16, 2013 amended complaint, Plaintiffs request that the Court find they are entitled to an easement by necessity or an easement by implication over land owned by Defendant. Trial was held on October 14, 2016, after which Plaintiffs requested additional time beyond that provided in the trial order to file proposed findings of fact and conclusions of law. The request was granted and both parties have presented their post-trial proposed findings/conclusions.

The testimony of Defendant's son, Craig Paul Wagner, surveyor, Diane Lenick, Defendant and Plaintiff Arthur R. Krusen, Jr. was presented at trial. Without objection, Plaintiffs submitted into evidence what they identified as the relevant deeds in the parties' chains of title together with a survey by Diane Lenick and both parties submitted photographs of what was identified as the pertinent area.

1

## Chains of Title

The law applicable to both easement by necessity and by implication requires an examination of the history of the transactions by which feuding parties obtained their interests in the respective parcels of real estate at issue. Plaintiffs Exhibit #4, being copies of the deeds in the parties' chains of title, includes the following information:

Plaintiffs obtained title to their parcel of property in Walker Township, Schuylkill County, Pennsylvania, from Joseph Pattay and Kathy Pattay by deed dated September 1, 2006. Briefly stated, the transferred property is described in the deed to be 357.55 feet, by 2,300 feet, by 284.52 feet, by 2,674.55 feet, consisting of 14.6034 acres. The copy of the deed in Plaintiffs' Exhibit #4 did not indicate the deed's recording date, or the book and page where filed.

Joseph Pattay and Kathy Pattay transferred the 14.6034 acres to Joseph Pattay and Kathy Pattay by deed dated May 14, 1999 and recorded in Record Book 631, page 282 on June 3, 1999. The deed indicated that the transferred property was part of the same premises which Mary Frances Pattay by deed dated October 12, 1995 and recorded in Deed Book 1689, page 97 conveyed to Joseph Pattay.

Mary Frances Pattay transferred land to Joseph Pattay on October 12, 1995 by deed recorded in Deed Book 1689, page 97 on November 18, 1996. The property transferred is described as consisting of thirty-seven and seven-tenths acres, less approximately ten acres which Margaret McLaughlin by deed dated April 30, 1937 and recorded in Deed Book 598, page 85, granted and conveyed to Webster J. Wagner and Irene Wagner. The parcel transferred to Joseph Pattay by Mary Frances Pattay is described as being three hundred and ninety-five and two-tenths perches, by twenty-six

2

and three-tenths perches, by four hundred and ten perches, by fifteen and four-tenths perches.

The land transferred by McLaughlin excepted in the deed to Joseph Pattay by Mary Frances Pattay was alleged by Plaintiffs to be approximately ten acres and is described in the deed to the Wagners as being about 1,509 feet by 290 feet and as having been part of the same property which M.A. Kilker and wife by deed dated April 17, 1923 transferred to Margaret McLaughlin by deed recorded in Deed Book 466, page 424. At trial, Defendant objected to the entry of the copy of the amended complaint, which was appended to the copies of the deeds in Plaintiffs' Exhibit #4, as part of the record. Plaintiffs then requested that only the copies of the deeds in that exhibit be made part of the record. The Court notes the averment made by Plaintiffs in the amended complaint about the McLaughlin land transfer to Wagners - which averment was denied by Defendant in his answer - simply for purposes of indicating why Plaintiffs had included the deed in their chain of title exhibit.

The final deed in Plaintiffs' chain of title exhibit is one dated April 17, 1923 by M.A. Kilker and Catherine L. Kilker which transferred property described as being 395.2 perches, by 26.3 perches, by 410 perches, by 15.4 perches, containing thirty-seven and seven-tenths acres to Margaret McLaughlin. The property was identified as the same property that John R. McLaughlin and Margaret McLaughlin, by deed dated the same day as the Kilker deed to McLaughlin, had conveyed to M.A. Kilker.

Notably, no deed to Mary Frances Pattay is included in Plaintiffs' chain of title exhibit. The deed from Mary Frances Pattay to Joseph Pattay indicates that she received the land from Patrick M. Canfield and Rose T. Canfield by deed dated October

3

12, 1995. Similarly, no deed into the Canfields is in Plaintiffs' Exhibit #4. Consequently, Plaintiffs' chain of title following the transfer into McLaughlin is not complete.

Per Plaintiffs' Exhibit #4, Defendant's chain of title consists of the following:

By deed dated February 10, 2005, Berk-Wagner Real Estate, LLC and Paul W. Wagner and Mildred M. Wagner transferred various tracts of land to Paul W. Wagner and Mildred M. Wagner. The deed was recorded on February 14, 2005 in Record Book 2137, page 125. Tract one is described as containing thirty-one and five-tenths acres. Tract two is described as a parcel being 1,509 feet long and 290 feet wide. Tract three is described as consisting of three parcels with parcel one containing 97 acres and 111 perches, parcel two containing 21 perches, and parcel three containing 200 acres, the latter, however, excepting certain land conveyed by Webster J. Wagner and Irene Wagner to Ralph Peters by deed of August 29, 1948. Tract four is described as including a ten-acre farm, five and two-fifth acres sprout and twenty-two and two-fifth acres barren, excepting land conveyed by Webster J. Wagner to Wayne Bensinger by deed dated November 29, 1973. Tract five is described as 1,509 feet in length by 888 feet in depth, excepting land conveyed by Webster J. and Irene Wagner to Joseph Malay by deed of May 25, 1971. Additionally, the deed excepts seven other parcels previously conveyed by Executors of the Will of Webster J. Wagner, or, by Webster J. Wagner, or, by Webster J. Wagner and his wife, or, by Paul W. Wagner and others.

The five above tracts are further described as being part of the same premises that Paul W. Wagner and Mildred M. Wagner by deed dated October 19, 1990 recorded in Deed Book 1454, page 524, conveyed to Paul W. Wagner and Mildred M. Wagner, and, as also being part of the same premises that Joan B. Wagner by deed of August

4

24, 2004 recorded in Record Book 2112, page 1965 conveyed to Berk-Wagner Real Estate, LLC.

By deed of August 24, 2004, recorded in Deed Book 2112, page 1965 on August 25, 2004, Joan B. Wagner transferred land to Berk-Wagner Real Estate, LLC consisting of six tracts of land with numerous exceptions noted. The property transferred includes land in Walker Township and a parcel in Blythe Township. The transfer was described as being a one-half interest in the premises that Kenneth E. Wagner by deed of February 5, 1993, recorded February 10, 1993 in Deed Book 1494, page 61, conveyed to Kenneth E. Wagner and Joan Wagner, his wife, with Kenneth having thereafter died.

By deed dated February 5, 1993, Kenneth E. Wagner transferred to Kenneth E. Wagner and Joan B. Wagner an undivided one-half interest in five tracts of land in Walker Township and one in Blythe Township, after numerous exceptions, described as being the same premises that Webster J. Wagner by deed of September 23, 1976 recorded in Deed Book 1230, page 216 conveyed to Webster J. Wagner, Paul W. Wagner and Kenneth E. Wagner. Webster J. Wagner thereafter died and his 1/3 interest was awarded to Paul W. Wagner and Kenneth E. Wagner. The purpose of the deed was to transfer the one-half interest of Kenneth into his and his wife's (Joan) names.

By deed of September 23, 1976 recorded in Deed Book 1230, page 216 on September 27, 1976, Webster J. Wagner transferred land to Webster J. Wagner, Paul W. Wagner and Kenneth E. Wagner described as five parcels in Walker Township and one in Blythe Township. Plaintiffs alleged in their complaint that Tract two in the above deed is the same property that Margaret McLaughlin by deed of April 30, 1937

5

conveyed to Webster J. Wagner and Irene Wagner in Record Book 598, page 85, being the approximate ten acres excepted from the transfer of the thirty-seven and seven-tenths acres of land from Mary Frances Pattay to Joseph Pattay in Plaintiffs' chain of title.

## Testimony

Plaintiff Arthur Krusen testified that about ten years ago he purchased a 14.9 acre tract of land (which he originally understood was to be 17.6 acres) after having viewed the property. To do so, he drove from a public roadway known as Valley Road, travelled over a dirt road until it ended and then drove across grass until he reached what he understood to be the property. Although Arthur Krusen learned that the property had no access to a public road prior to his purchase, he thought he could eventually obtain access. Plaintiffs' land is bordered on three sides by property owned by Defendant and on one side by land of Deep Run All Sports Club. After purchasing the land, Plaintiff Arthur Krusen offered $2,500.00 to Defendant's son - who was in charge of Defendant's land for his father - to obtain access to the property. The offer was not accepted.

Defendant Paul Wagner testified credibly that the dirt road on his property - utilized for farming - is and has been for access by farm equipment and occasional hunters. To Defendant's knowledge, the dirt roadway was never traversed by anyone for any purpose, including Plaintiffs' predecessors in title, except for Defendant's farming, those he allowed on the property to farm the land, and by occasional hunters

6

whom he allowed to hunt the land.[1] Defendant is 94 years old and was able to recall events since the time his father owned what is now his land. Defendant's son, Craig Paul Wagner, and some workers placed posts and a cable across the dirt farm road near its exit onto the public road about thirty years ago to prevent unpermitted use of the roadway by others after a boy rode over Defendant's oat fields with a four-wheeler or motorcycle. Plaintiffs' counsel was provided a key to obtain limited access to the roadway after Plaintiffs had initiated a proceeding against Defendant under the Private Road Act. That case was eventually terminated and the lock to the gate was changed by Defendant.

---

Plaintiffs have alleged that they are entitled to an easement over Defendant's land by necessity. The Pennsylvania Commonwealth Court stated in _Graff v. Scanlan_, 673 A.2d 1028 (Pa. Cmwlth. 1996):

> The three fundamental requirements for an easement by necessity to arise are the following:
>
> 1) The titles to the alleged dominant and servient properties must have been held by one person.
>
> 2) This unity of title must have been severed by a conveyance of one of the tracts.
>
> 3) The easement must be necessary in order for the owner of the dominant tenement to use his land, with the necessity existing both at the time of the severance of title and at the time of the exercise of the easement.

Id. at 1032.

---

[1] The roadway was accessed for purposes of The Private Road Act proceedings.

7

In analyzing Plaintiffs' claims, it must be noted that Plaintiffs did not enter into the record a complete chain of title from the alleged common owner - McLaughlin. No transfer by McLaughlin after the 1923 deed into her from the Kilkers is in the record relative to Plaintiffs' chain of title. Consequently, the history of the title into Mary Frances Pattay is not evident. Despite the failure of pertinent proof on ownership via a complete chain of title into Plaintiffs, the Court will hereafter identify the 14.6034 tract as being owned by Plaintiffs as Defendant did not argue or contest the matter. Importantly, the chain of title issue does not impact the final determination on the matters under consideration. Consequently, Plaintiffs' contention that their property and Defendant's property were previously held by one owner will be accepted for purposes of evaluating Plaintiffs' right to an easement.

Plaintiffs alleged in their amended complaint that "The Landlocked Property and Accessible Property were previously owned by pursuant as one parcel." (Amended Complaint, paragraph 18). Although the allegation is unclear, Plaintiffs contend that their property became landlocked in 1937 when Margaret McLaughlin transferred a portion of her property to Webster and Irene Wagner. However, the precise locations of the parcel of land which McLaughlin originally received from Kilkers and the land she transferred in 1937 to Wagners were never identified at trial. Although Plaintiffs presented testimony from and a survey by Diane Lenick, the survey was prepared for the prior Private Road Act proceedings. As such, the surveyor depicted all land owned by Defendant in the survey map without, however, delineating the location of the tract involved in the former McLaughlin transfer. Consequently, whether the farm road depicted on the survey map is located on any portion of the property at one time held by

8

McLaughlin is not known. The likelihood of the entire roadway being within the McLaughlin transfer appears unlikely, however, simply based on the description of the land transferred and the road's length and its route as shown on the survey map. Consequently, no proof of "strict necessity" of access over the property McLaughlin transferred to Defendant's predecessors in title (described as a 1,509 feet by 290 feet parcel) either in 1937, or, as of the date of the trial was presented. (*Graff, supra.* at 1032).

Additionally, Plaintiffs failed to identify the location of the approximate twenty-seven and seven-tenths acre tract of land held by Mary Frances Pattay, identified as one of Plaintiffs' predecessors in title, who transferred her land to Joseph Pattay, the latter who transferred only the 14.6034 acre lot to Plaintiffs. The location of the approximate thirteen acres of Pattay's remaining land is unknown as is its impact on Plaintiffs' easement claim. Likewise, Plaintiffs failed to address whether access was or is available to their tract via the Deep Run All Sports Club land. Consequently, on a number of grounds, no easement by necessity has been proven.

An easement by implication may be imposed upon a subservient estate where such finding supports the intent of the parties to the conveyance which resulted in the severance of the dominant and servient estates. That intent may be found by examining the properties' surroundings, the terms of the original conveyance resulting in the severance, and, the res gestae of the transaction. See, *Nord v. Devault Contracting Company, Inc.*, 334 A.2d 276 (Pa. 1975); *Thomas v. Deliere*, 359 A.2d 398 (Pa. Super. 1976). Under the traditional test for establishing an easement by implication, it must be proven that at the time of severance an open, visible, continuous and permanent use

9

· existed of the easement which was necessary for the beneficial enjoyment of the dominant estate. _Possessky v. Diem_, 655 A.2d 1004 (Pa. Super. 1995).

Plaintiffs did not present evidence surrounding the time the property of McLaughlin was severed or about the actions of any former owner of Plaintiffs' property. Defendant's testimony established that since his father Webster owned his farm many decades ago, the property now claimed to be owned by Plaintiffs was not accessed by third parties traveling over Defendant's land. (Again, it must be noted, Plaintiffs' chain of title evidence after the deeds into McLaughlin and Joseph Pattay is incomplete.) Further, the balance of the evidence did not prove that any roadway ever existed which extended to Plaintiffs' property from the public roadway. Although a dirt farm road traverses Defendant's property, the farm road did not and does not extend to the property of Plaintiffs. Moreover, the evidence did not show that the farm road was located on the ten acre parcel which Plaintiffs contend was the portion of land (described as 1,509 feet by 290 feet rectangular) that McLaughlin severed in 1939 from the thirty-seven and seven-tenths acre tract she had received in the 1923 Kilker deed. In fact, Plaintiffs did not prove that any access to the 14.6034 acre tract when held by any of Plaintiffs' predecessors in title existed across the property that Defendant's predecessors in title received from McLaughlin. Similarly, Plaintiffs did not prove that any access over the parcel which Plaintiffs claim is the subservient estate - or, in fact, any land of Defendant's - had been permanent, continuous and apparent at any time, or, had ever been utilized by Plaintiffs' predecessors in title.

The Restatement of Property test - an alternative to that of the traditional test - to determine both the actual or implied intention of parties when land is severed and

10

whether an easement should be implied from the circumstances provides for a balancing approach with the following factors to be considered:

> (a) whether the claimant is the conveyor or the conveyee,
>
> (b) the terms of the conveyance,
>
> (c) the consideration given for it,
>
> (d) whether the claim is made against a simultaneous conveyance,
>
> (e) the extent of necessity of the easement to the claimant,
>
> (f) whether reciprocal benefits result to the conveyor and the conveyee,
>
> (g) the manner on which the land was used prior to its conveyance, and
>
> (h) the extent to which the manner of prior use was or might have been known to the parties.

*Mann-Hoff v. Boyer*, 604 A.2d 703, 707 (Pa. Super. 1992).

At trial, Plaintiffs' evidence did not address most of the above factors. Consequently, little is known about the intent surrounding the 1937 severance besides what is contained in the McLaughlin deed. The location of the tract McLaughlin received in 1923 relative to land held by Defendant was never specified and it is unknown whether McLaughlin needed or desired access to the property she retained in 1937.[2] Further, Plaintiffs did not present proof establishing whether access has been or is available to their tract over the property identified as being owned by Deep Run All Sports Club. In addition to having failed to identify where the property transferred in

---

[2] The deed description indicates adjoining land may have then been held by the McLaughlin family.

11

1937 is located, Plaintiffs failed to identify where the land retained by Joseph Pattay following his 1999 deed is located and whether access to Plaintiffs was/is available over that land.

Plaintiffs' proof simply was deficient to support granting the relief they seek. Importantly, the Court cannot base its determination on speculation.

Consequently, as Plaintiffs failed to meet their burden of proving by a preponderance of the evidence that they are entitled to either an easement by necessity or by implication over the parcel of land of Defendant which his predecessors in title had received from McLaughlin, judgment must be rendered in favor of Defendant.

12

COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY—CIVIL ACTION-LAW

ARTHUR R. KRUSEN, JR. and     : No. S-1378-2013
VANESSA KRUSEN, husband and     :
wife,     :
        Plaintiffs     :
    :
   vs.     :
    :
PAUL W. WAGNER,     :
        Defendant     :

Sean E. Summers, Esquire - for Plaintiffs
John B. Lieberman, III, Esquire - for Defendant

## DECREE

RUSSELL, J.

AND NOW, this ____7th____ day of November, 2016, following trial, it is determined that Plaintiffs Arthur R. Krusen, Jr. and Vanessa Krusen failed to meet their burden of proof in establishing any right to the relief requested.

Accordingly, Judgment is entered in favor of Defendant Paul W. Wagner and against Plaintiffs Arthur R. Krusen, Jr. and Vanessa Krusen on all claims in Plaintiffs' complaint.

BY THE COURT,

_____ J.

128a

COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY—CIVIL ACTION-LAW.

ARTHUR R. KRUSEN, JR. and      :    No. S-1378-2013
VANESSA KRUSEN, husband and    :
wife,
           Plaintiffs        :

                         :

     vs.                     :

PAUL W. WAGNER,          :
           Defendant      :

Sean E. Summers, Esquire - for Plaintiffs
John B. Lieberman, III, Esquire - for Defendant

## DECISION

RUSSELL, J.

Plaintiffs Arthur R. Krusen, Jr. and Vanessa Krusen filed a post-trial motion to the November 7, 2016 Decision of this Court determining that Plaintiffs had not proven a right to an easement by necessity or by implication to gain access to their parcel of woodland by traversing over farm land owned by Defendant Paul W. Wagner. The Court will address the alleged errors identified by Plaintiffs in their post-trial motion, which requests that the Court "reverse its decision" or "grant a new trial," following a brief discussion of a few examples of the Court's concerns about the proof at trial.

As noted in the November 7, 2016 Decision, Plaintiffs did not present a complete chain of title following what Plaintiffs claimed was the property severance pertinent to their case - namely, when the properties of the predecessors in title of Plaintiffs and of Defendant were severed in 1937.[1] Plaintiffs acquired 14.6034 acres of land by deed dated September 1, 2006. Plaintiffs' land is purportedly a portion of the property

---

[1] Plaintiffs never established how, if at all, the owner of the property involved in the 1937 severance had access to their land prior to severance.

1

acquired by a predecessor in title in 1995. Plaintiffs' grantors Joseph and Kathy Pattay received the 14.6034 acres of land in 1999 via deed which described the land as a part of the same premises that Mary Frances Pattay transferred to Joseph Pattay in 1995. The 1995 deed described the land transferred to Joseph Pattay as 37.7 acres. The location of and any access to the land retained in what appeared to be the 1999 severance were never identified and addressed.[2]

Additionally, the reliable testimony established that the dirt farm road which Plaintiffs desire to utilize over Defendant's land - the latter which clearly consists of much more acreage beyond the parcel received by Defendant's predecessor in the 1937 severance - accessed a public roadway known as Valley Road. The dirt farm road's terminus, however, is about 500 yards away from Plaintiffs' property line. Defendant, a man of advanced age and the only witness knowledgeable of early events, recalled that the farm road never extended to the location of Plaintiffs' land in 1937 or any time thereafter. To Defendant's knowledge, since 1937 the dirt roadway was only utilized by Defendant and his predecessors for farming and by hunters whom Defendant allowed on the farmland. About thirty years ago, after his fields had been damaged by a minor operating a four-wheeler, Defendant had posts and a locked cable installed near the intersection of the farm road with the public roadway to prevent third parties from accessing his farmland. The reliable proof did not establish that after 1937 any owner

---

[2] Without elaboration provided, Plaintiffs entered deeds into evidence to establish their chain of title. The Court examined the language of the deeds which may or may not have constituted accurate recitations of the descriptions of the lands received and transferred. Consequently, the possible 1999 severance is noted simply as an issue which was unexplained via the proof presented at trial as it is not known whether any severance actually occurred at that time.

2

of the land now titled in Plaintiffs' names traversed Defendant's land via the farm road without Defendant's consent.[3]

To establish an easement by necessity over what Plaintiffs have identified as the servient estate, Plaintiffs were required to prove that the easement over that parcel was necessary both at the time of severance of title in 1937 and now. To do so, the servient estate's location must be known. However, Plaintiffs never identified the location of that estate. As noted, Defendant owns much more acreage than the parcel involved in the 1937 severance and the evidence did not even address whether access to a public roadway by traversing the alleged servient property existed at any time. In fact, it appeared to the Court based upon questions posed during cross-examination of Plaintiff Arthur Krusen that access does not exist over the unidentified servient estate and Plaintiffs do not seek access across it. Moreover, Plaintiffs presented no proof about the necessity of an easement over the alleged servient parcel in 1937 by the then-predecessor in title to Plaintiffs. Without identification of what became the alleged servient estate in 1937, it is unknown whether any access was then or is now even feasible over that property. Further, the manner, if any, by which any predecessor in title of Plaintiffs allegedly accessed what Plaintiffs now own or any portion of the land prior to the 1937 severance, and what impact the apparent 1999 severance had on access to Plaintiffs' property were left unexplained.

Prior use is one of several factors to be considered when determining if a right to an easement by implication exists. Plaintiffs, however, did not prove prior use by their predecessors in title of any portion of any lands now owned by Defendant to access a public road. In fact, the reliable evidence established no prior use.

---

[3] Access was provided during and limited to the Private Road Act proceedings.

3

The Court hereafter addresses the specific issues set forth in Plaintiffs' post-trial motion in the order raised therein.

First, contrary to Plaintiffs' position, the Court found that the evidence did not prove that a private road existed at all relevant times from a public road to Plaintiffs' land. The Court accepted as credible and reliable the testimony of Defendant and his son which did not support such claim of Plaintiffs. Notably, Plaintiffs presented no testimony from their immediate, or any, predecessor in title. The photographic evidence presented by both parties did not indicate that a private roadway traversed Defendant's land all the way to the land of Plaintiffs. Although Plaintiffs' surveyor prepared a map for use in a prior action which Plaintiffs initiated under the Private Road Act, according to the surveyor that map did not depict the private road as it actually existed. Rather, the map depicted not only the farm road on Defendant's land but also a proposed extension of that road so to indicate what the surveyor believed would be the most appropriate location for a roadway to be placed for purposes of the Private Road Act proceeding.[4] Moreover, as noted previously, no evidence indicated that the farm road or any portion of it was ever located on the land which Plaintiffs have called - but never specifically identified by, for example, locating it on a map, depicting it via photographs or by other means - as the servient estate.

With regard to Plaintiffs' second issue, the Court did not determine that the element of "strict necessity" required a "heightened level of proof." Plaintiffs were required to prove they possessed a right to an easement by necessity by a preponderance of the evidence. However, to do so, they needed to prove all elements

_____

[4] Plaintiff Arthur Krusen testified on cross-examination that he did not know of any evidence existing which indicated that the roadway depicted on the survey map existed in 1937 at the time of the property severance.

4

the law requires for one to establish a right to an easement by necessity. Although Plaintiffs did not identify a current means of access to their property, that does not mean that they, nevertheless, were entitled to an easement over Defendant's land despite their not having proven all of the necessary elements of their possessing such right.

The Court does not understand what Plaintiffs mean by their third issue that the Court "faulted" them for purchasing their property. The Court observed that Plaintiffs purchased the property knowing that no right of way to it existed[5] and that Plaintiff Arthur Krusen had offered Defendant money to obtain access to the property. Those are the facts. To the extent Plaintiffs perceive the Court's factual findings as indicating that blame was being placed on them, they have read something into the Court's analysis which was not meant to and does not appear in its Decision.

As to Plaintiffs' fourth issue about the element of strict necessity, the Court noted that Plaintiffs' evidence did not specifically address whether other possible means of access - such as through the adjoining Deep Run Sports Club woodland property - existed at the time of the 1937 severance or the current time. The finding related to a lack of proof. Again, the incomplete chain of title evidence, the lack of identification of the alleged servient estate, the failures to indicate the existence of any potential at any time for real access over the parcel denominated, but never identified as the alleged servient estate, and, whether access had ever been or was available over the Deep Run Sports Club woodland property which abutted Plaintiffs' woodland property are some issues left unanswered by Plaintiffs.[6]

---

[5] Defendant's son testified that Plaintiff Arthur Krusen had stated that the realtor and seller advised him that no access existed to the property. Plaintiff Arthur Krusen also testified he knew the property was landlocked prior to purchasing it.
[6] Evidence indicated the Deep Run Sports Club property accessed a public road.

5

Although Plaintiffs' fifth complaint is that the Court required "heightened" proof that the roadway existed in the "exact same state" in 1937, Plaintiffs do not identify where the Court indicated the alleged heightened proof requirement or made any comment about their having to prove the exact state of the roadway in 1937. No proof existed in the record about any roadway leading to Plaintiffs' property in 1937, in 1938, or thereafter. Accepting that in 1937 the farm road existed in the same location from its starting point at the intersection with the public road to the terminus in the farm field as it does today does not establish that the roadway ended at Plaintiffs' property line or that it extended over any portion of the alleged servient estate. Again, the latter finding had to be made because Plaintiffs never identified where the alleged servient estate was located.

To establish that they were entitled to an easement by implication under the traditional test, Plaintiffs needed to prove prior use of the alleged easement area. Plaintiffs appear to argue that because they could drive over a farm road located on lands of Defendant and then, after it ended, walk to or drive over the farmland of Defendant to reach their property, they are entitled to an easement over Defendant's property whether or not that route had anything to do with the severance of 1937, whether or not any part of that route was located on land involved in the 1937 severance, whether or not such route was evident on the ground at any time, and, whether or not prior use of any alleged access way over Defendant's property ever took place by Plaintiffs' predecessors in title. However, for the Court to make such a finding, the element of prior use, necessary to establish an easement by implication under the traditional test, would have to be disregarded. Similarly, Plaintiffs did not address the

6

multiple factors under the alternative Restatement test beyond claiming that an easement was necessary to get to their land.

As their sixth issue, Plaintiffs claim that the Court erred by not considering any public policy related to landlocked property. Plaintiffs never previously raised this issue and do not cite any legal authority for the contention. Plaintiffs appear to argue that because they were unable to obtain or otherwise did not fully pursue securing access over Defendant's lands via their litigation under the Private Road Act, they should nevertheless be allowed to receive the same relief they were seeking in that prior litigation via this case without, however, being required to pay the compensation contemplated by a Private Road Act proceeding[7] or being required to present the proof necessary to establish the requisite elements of an easement by necessity or implication. The Court, however, is bound to apply the law as developed by the appellate courts to the facts as it finds them to have been or not to have been established. Consequently, it cannot simply find Plaintiffs are entitled to relief in this action solely because their property is landlocked and eliminate the requirement that Plaintiffs present proof of the requisite elements delineated by law for an easement award. That was the basis for the Court's November 7, 2016 determination - a lack of the proof mandated by law.

---

[7] Plaintiffs claim the Private Road Act was determined to be unconstitutional. Although their categorization of the ruling in *In the Matter of Opening a Private Road for Benefit of O'Reilly*, 5 A.3d 246 (Pa. 2010), would appear to be too broad, as the Pennsylvania Supreme Court, nevertheless, determined that the United States and Pennsylvania constitutions "mandate that private property can only be taken to serve a public purpose," (*Id.* at 258), it would also appear that the same rationale would apply to a case such as herein - namely, "public policy" would not trump the constitutional mandate - i.e., a property owner would not be entitled to relief simply because his land is landlocked. Rather, public policy would require that the constitution be followed and that the elements to establish an easement by necessity or implication be proven.

7

Plaintiffs' seventh issue - that the Court misapplied the law - is vague. Without specifics, the Court is unable to address the matter.

As Plaintiffs' issues identified in their post-trial motion are not found to merit relief, the motion is being denied.

8